In re TRAILER TRANSIT, Inc.

Bankr. No. 17963.

United States District Court, D. Minnesota, Fourth Division.

Jan. 20, 1951.

Joe A. Walters, of Minneapolis, Minn., for the trustee.

R. Paul Sharood, of St. Paul, Minn., for the claimant.

NORDBYE, Chief Judge.

Trailer Transit, Incorporated, hereinafter sometimes called the debtor or trucking company, has been engaged in the trucking business during all the time relevent to this proceeding. On or about April 8, 1949, A. J. Pietrus & Sons, hereinafter sometimes called Pietrus, shipped a large quantity of eggs to New York over the Trailer Transit system. The truck carrying the eggs was upset as a result of an accident occurring through the Trailer Transit company's negligence, and Pietrus thereby suffered a loss of $1,691.54 in damages to its eggs. At the time of the accident Trailer Transit carried insurance with four insurance companies which, collectively, covered losses on the egg cargo. And within the required time Trailer Transit filed the appropriate proofs of loss with the insurance companies. Each insurance company adjusted the loss and in September, 1949, they delivered to their agent, Charles W. Sexton Company of Minneapolis, separate drafts which totaled $1,291.54. (Each policy contained a one hundred dollar deductible clause, so that the payments by the four insurance companies totaled four hundred dollars less than the total loss). Three of the drafts were payable both to the trucking company and to Pietrus. One was payable to the trucking company alone. The Sexton Company, however, held the drafts and claimed an interest therein for the premiums due on the policies for which the transit company had not paid. On November 4, 1949, Pietrus commenced action against the transit company in District Court, Hennepin County, Minnesota, and named and served on that date the Sexton Company as garnishee in an ancillary proceeding. The main action contained four separate causes of action and included the loss of the eggs as one cause of action. The complaint and summons were served on the trucking company on November 16, 1949. The garnishee disclosed that it held the noted funds for the trucking company but claimed an interest in them for unpaid premiums of insurance. On November 18, 1949, an involuntary petition in bankruptcy was filed against the trucking company, and on December 16, 1949, the company was declared

a bankrupt. Pietrus proved up its case against the trucking company as a default matter on January 16, 1950, in District Court for Hennepin County, Minnesota, and obtained and docketed a default judgment against the trucking company. On January 17, 1950, Pietrus filed proof of claim in this bankruptcy matter.

The Trustee originally petitioned the Referee for an order declaring null and void the lien which Pietrus might have obtained by virtue of the garnishment proceedings upon the funds in the Sexton Company's hands. But he subsequently amended that petition so as to ask that the Pietrus lien be preserved and conveyed to the Trustee for the benefit of the estate. (By agreement of all parties, the Sexton Company turned over the money which it held to the Referee subject to all rights against it).

The Referee denied the Trustee's petition. He held that the funds in the Sexton Company's hands were held on constructive trust for Pietrus and that because the funds were turned over to him by agreement of all parties concerned subject to all rights against the moneys, the Referee also held the $1,291.54 in trust for the benefit of Pietrus. He ordered that the money be turned over to Pietrus. This is the order of which the Trustee now seeks review in this court. Three questions are certified for review: (1) Did the Referee err by incorporating in his findings and conclusions, despite the Trustee's failure to ask for such relief, the assumption that Pietrus had abandoned its lien claim which might have arisen out of the garnishment proceedings in state court because in response to the Trustee's petition and by brief Pietrus claimed only a constructive trust, and because a lien created within four months of the filing of a bankruptcy petition is void if, as here, the bankrupt was insolvent when the lien was obtained? (2) Did the Referee err in failing to direct that the lien which might have arisen in favor of Pietrus from the garnishment proceedings be conveyed to the Trustee under the facts of this case which he found justified a constructive trust in favor of Pietrus? (3) Did the Referee err in failing to find that Pietrus made an irrevocable election of remedies and thereby waived its right as beneficiary of a constructive trust when it (a) instituted action against Trailer Transit in state court and proved up a default judgment; (b) initiated garnishment proceedings ancillary to the main action; and (c) filed its claim in the bankruptcy proceedings without asserting a constructive trust upon the funds in question?

At the outset, it seems obvious that if the funds in question were held in constructive trust for Pietrus, then Pietrus is entitled to them unless it has elected a different remedy or unless other factors prevent allowance of a constructive trust at this time. The decisions cited by the Referee support his conclusion that a constructive trust exists in favor of Pietrus with respect to the funds in question. And the Minnesota Supreme Court's decisions upon constructive trusts indicate that Minnesota would be in accord with the rule noted by the Referee as applicable to this situation. The Referee's conclusions that a constructive trust existed here in favor of Pietrus is sound and must be affirmed.

That the Referee was entitled to determine in this case whether a constructive trust and a valid, useful lien existed is unquestionable. The Trustee petitioned for transfer of the lien. If the lien did not exist, or if it was invalid, then the Referee obviously would not be entitled to order its transfer. Equity will not order a useless act. The questions of lien validity, constructive trust, and the other issues determined by the Referee's memorandum constitute premises for the implicit conclusion that the lien should not be transferred to the Trustee.

Whether the Referee concluded that the inchoate lien arising from the garnishment was void or voidable seems immaterial here. The Referee's statement that the lien was void was a premise for his correct conclusion that Pietrus abandoned all its theories and rights except that of constructive trust. It was not directed to the question of whether the lien should be transferred. Consequently, any error which may have existed is immaterial in

574

view of the sound conclusion. In any event, the Trustee expressly concedes that even if the lien were voidable, as he claims, and not void, the Referee, in his discretion, could refuse to order transfer of the lien to the Trustee. The Referee did not abuse any discretion in refusing to transfer the lien to the Trustee in view of the existence of a constructive trust. Pietrus owned both the constructive trust and the inchoate voidable lien claimed by the Trustee. By appropriate action Pietrus could obtain legal title to the property which in equity it owned. That a lien upon such property is subordinate to Pietrus' rights as beneficiary of a constructive trust on the facts of this case can scarcely be doubted. Obviously, the quality of the lien would not be enhanced by its being transferred to the Trustee. Any benefit which the Trustee claims would result to the general creditors from a transfer of the lien exists in theory, not reality. If the lien will not be prior to the constructive trust after transfer to the Trustee, its transfer is useless here. Because the Bankruptcy Court sits as a court of equity, it will not order a useless act. The cases cited by the Trustee do not dispute that rule nor require a change in the conclusion upon the facts of this case.

The determination of the third question presented for review disposes of the remaining issues. The problem is whether Pietrus made an election of remedies when it did the acts noted in the question certified for review. There is no doubt that one " 'who has voluntarily chosen and carried into effect an appropriate legal remedy, with knowledge of the facts, and of his rights, will not, in general, be allowed to afterwards resort to an inconsistent remedy, involving a contradiction of the grounds upon which he before proceeded.' " First Nat. Bank of Osakis v. Flynn, 1933, 190 Minn. 102, 104, 250 N.W. 806, 807, 92 A.L.R. 1272. But no inconsistency appears to exist here and Pietrus does not appear to have made an irrevocable election of remedies because of the acts cited by the Trustee. As the Referee points out, the filing of a claim against the estate without mentioning the existence of a constructive trust did not prevent Pietrus from asserting

a constructive trust against funds not in the bankrupt estate and over which the bankruptcy court had no jurisdiction. And in order to be able to file a claim for unliquidated tort damages, the action must at least be commenced prior to the bankruptcy. This action was brought by Pietrus prior to bankruptcy. The evidence does not show that Pietrus knew Trailer Transit was going to file in bankruptcy. It was an involuntary proceeding. The mere commencement of an action is not an irrevocable election of remedies. First Nat. Bank of Osakis v. Flynn, supra. Consequently, the bringing of the tort action is not inconsistent with a constructive theory. The Trustee contends that Pietrus could have filed a claim in contract, and therefore that the tort action was not necessary in order to enable Pietrus to file a claim. But Pietrus was not required to file his claim on a contract theory. Pietrus could adopt its own theory and stand upon the consequences. Moreover, if the mere filing of a claim were, as the Trustee contends, an election of remedies, the basis upon which it is filed —tort or contract—would not control, and the Trustee's criticism of the Referee's statement that the filing of the tort action was necessary in order to file a tort claim is consequently of no effect. The mere fact that Pietrus obtained a default judgment after the debtor was adjudicated a bankrupt does not seem to be a controlling election on the facts of this case in view of the history of Section 63, sub. a(7) of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. a(7), as pointed out by the Referee. It seems apparent that when the default judgment was proved up Pietrus was not relying upon the legal action to assert its rights. The next day Pietrus filed a claim in the bankruptcy proceedings.

The existence of the garnishment did not constitute an election. The garnishment, which was ancillary to the main action, never was reduced to judgment against the garnishee. It seems no different in principle than a main action commenced but not reduced to judgment. As noted above, the mere commencement of an action does not constitute an election of remedies. The garnishment here was not against any par-

ticular funds in the hands of the insurance companies' agent, as the Trustee assumes. In Minnesota garnishment is against the party, not the property. Minn.Stat.Ann. § 571.42. Pietrus sought to catch all the funds which the agent might have for Trailer Transit, not merely the funds in question. Pietrus' loss stated in its complaint was in excess of the amount of the checks held by the agent for Trailer Transit. Moreover, the garnishment was not merely in aid of Pietrus' claim for loss of the eggs in the amount here involved. Pietrus stated four causes of action in its complaint, and apparently the garnishment was in aid of the three other causes of action as well as the one with which we are here concerned—the one to recover losses for which the insurance companies issued checks in an amount $400 less than the actual loss. Under all the facts of this case, the garnishment did not constitute an election of remedies.

Consideration of the questions certified for review justifies the Referee's conclusions. His order should be and hereby is affirmed. It is so ordered.

An exception is reserved.